# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT OWENSBORO

SHANE DUAN BRIGHT                                                                 PLAINTIFF

v.                                                     CIVIL ACTION NO. 4:10CV-P145-M

LADONNA H. THOMPSON *et al.*                                  DEFENDANTS

### MEMORANDUM OPINION

This matter is before the Court on initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the complaint will be dismissed.

### I.

Plaintiff, a convicted inmate currently incarcerated at the Green River Correctional Complex (GRCC), filed a *pro se* complaint against Kentucky Department of Corrections (DOC) Commissioner LaDonna H. Thompson, Kentucky State Reformatory (KSR) Warden Cookie Crew, and GRCC Warden Randy White. He sues Defendants in their individual and official capacities.

Briefly, Plaintiff claims that funds which are to be used for the benefit of the inmate population are being misappropriated; that the inmate canteen provider is price gouging the inmates; and that after complaining about these issues, he was placed in segregation and transferred from KSR to GRCC in retaliation and in violation of his due process rights.

More specifically, on October 21, 2009, Prison Program Coordinator, Ms. Robertson, explained to Plaintiff and other KSR students that less than 25% of the $100,000 allocated for e-learning and college courses had been used, and she suggested that the students write letters to

Deputy Warden Steve Adwell[1] requesting that the money be exhausted by allowing them to take more than one class while still paying the required $35.00 co-pay per class. On October 22, 2009, Plaintiff wrote a letter to Deputy Warden Adwell about exhausting the money; on November 18, 2009, Deputy Warden Adwell responded, "I am in great hopes that any leftover funds may be moved to fund re-entry. However it looks a as there won't be any excess college funds." Plaintiff claims, however, that education courses *are* part of re-entry so that the allocated $100,000 was not being exhausted on those programs for which it was earmarked.

On November 30, 2009, Plaintiff wrote a letter to Ms. Lori Farris, Mediation Branch Manager, Consumer Protection Division asking her office to investigate the DOC but never received a reply. On December 1, 2009, Plaintiff's mother wrote a letter to Deputy Commissioner Al C. Parke but never received a reply. On December 3, 2009, Deputy Warden Adwell posted a memo stating that "'inmates shall be participating in all recommended re-entry related programs for which they are eligible." According to Plaintiff, this did not include education/college programs. At some unspecified point, Plaintiff reports complaining of the issues of price gouging and education funding to Governor Steve Beshear and to the Attorney General Jack Conway by way of mailing them a 70+ page packet; Plaintiff claims that both packets were forwarded to the DOC but that nothing was done to rectify any of the issues. Plaintiff reports filing a lawsuit as to the issues in the Oldham Circuit Court on January 28, 2010, a copy of which he mailed to Defendant Crews via institutional mail. He also reports filing a grievance on February 1, 2010, regarding Sgt. Jefferson's harassment of him in the law library;

---

[1]On several occasions in the statement-of-claim portion of the complaint, Plaintiff refers to Adwell as a "Defendant Adwell." Plaintiff, however, fails to list him in the caption of the complaint or in the parties section. The Court does not consider Adwell to be a party to this action.

on March 3, 2010, he received the Commissioner's review of this grievance. On March 24, 2010, his Oldham Circuit Court case was dismissed without prejudice because he did not pay the filing fee.

Then, on April 19, 2010, "the administration" at KSR placed him in segregation pending investigation. Per a Detention Order that Plaintiff attached to his complaint, Sr. Captain Whitfield and Lt. Shantz placed Plaintiff in segregation and then notified Defendant Crews who concurred with the situation. While in segregation, Plaintiff, on April 20th, April 21st, and April 23rd, advised Lt. Hollkamp and other officers that he needed to be escorted to physical therapy for his treatment. Each request was denied. On April 26, 2010, someone gave Plaintiff the informal resolution to a grievance he had filed, the subject of which is unknown. Plaintiff requested an appeal form, but on April 28, 2010, Plaintiff, without ever meeting with the Classification Committee, was transferred from KSR to GRCC.[2]

Upon arriving at GRCC, Plaintiff asked about filing a grievance regarding his transfer but was told by the Grievance Coordinator, Debra Banks, that Classification Committee decisions are non-grievable. On May 4, 2010, Plaintiff wrote a letter to Defendant GRCC Warden White requesting that he be allowed to continue his educational path that he had been on since May 2008. He also inquired about his physical therapy treatment that he had not completed prior to his transfer. Plaintiff states that per GRCC Nurse Dietrich, GRCC does not have the facilities to accommodate Plaintiff's physical therapy treatment. On May 12, 2010, Plaintiff received a reply from Deputy Warden of Operations, Louis R. Korfhage, explaining that he must remain at

---

[2]Plaintiff reports that on September 28, 2009, he did meet with the Classification Committee at KSR for his annual reclassification but that the committee made no recommendation to reclassify or transfer Plaintiff because he had "clear conduct with honor status and was in Vocational School and College since May 2008, and in several other programs."

3

GRCC for six months before he can be considered for a transfer. In a reply dated May 13, 2010, DOC Program Administrator Jennifer Tracy explained to Plaintiff that if the institution declines to make a recommendation for transfer, then her office had no further solution. According to Plaintiff, no one listened to him even after he explained to Defendant Warden White, to the DOC, and to "the Medical Staff" that he was in the middle of a college semester at KSR and due to graduate from Electrical Technology class on June 10, 2010; had clear conduct with honor status; and was in the middle of physical therapy treatments at KSR.

While at GRCC, Plaintiff continued to grieve and write letters about the canteen vendor's price gouging and misappropriation of funds. He entered into the Substance Abuse Program (SAP). He also continued to complain about his transfer.

On August 13, 2010, Plaintiff received a copy of the April 28, 2010, KRS Transfer Authorization Form, which he claims failed to mention that he was in the middle of a college semester, only weeks from graduation; failed to mention his physical therapy treatments were not yet complete; and contained other untrue and/or conflicting statements. On August 25, 2010, Plaintiff wrote to Defendant Warden Crews asking for the specific reason as to why he was abruptly transferred from KSR, but he received no response. During a discussion between Plaintiff and his Unit Administrator, Randy Atkins, in September 2010, Atkins said that based on a review of Plaintiff's file, he would not have recommended a transfer from KSR and noted that GRCC does not offer any of the programs (Electrical Technology, English 102, and Physical Therapy) that Plaintiff was in at KSR.

On October 5, 2010, Plaintiff complained several times about pain in his feet and plantar fascitis. Nurse Dietrich reviewed Plaintiff's medical history and discovered that he had been

4

transferred from KSR before completion of his physical therapy treatment. Nurse Dietrich then emailed the "heads of the Medical Department" in Frankfort about this issue. On October 8, 2010, Nurse Dietrich told Plaintiff that he had the option to return to KSR but noted that if he transferred to KSR, he would have to stop SAP, a program in which he had been engaged for five months. Plaintiff knew the parole board would frown upon his failing to complete two programs – the Electrical Technology program when he was initially transferred from KSR and the SAP if he decided to leave GRCC and return to KSR. Nurse Dietrich advised Plaintiff to think about it. On October 11, 2010, Plaintiff told Nurse Dietrich that he would remain at GRCC "because of ongoing issues with K.S.R. and although [he] has clear conduct, K.S.R. was notorious for trying to get him convicted on bogus write-ups." Nurse Dietrich concurred with Plaintiff's decision and, on that same day, gave Plaintiff a steroid shot to decrease the inflammation in his foot.

As relief, Plaintiff seeks compensatory and punitive damages and an injunction stopping the Department of Corrections from violating his due process rights, suspending all canteen sales, and investigating prices and misappropriation of funds.

## II.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519 (1972), the duty "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19

(1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.

### A.  42 U.S.C. § 1983

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two allegations are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). First, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States," *West v. Atkins*, 487 U.S. 42, 48 (1988), and second, he "must show that the alleged deprivation was committed by a person acting under color of state law." *Id.* "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

#### 1. Official-capacity claims for damages

State officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Furthermore, official-capacity claims for damages against state officials are barred by the Eleventh Amendment to the United States Constitution. *Will*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This

7

[Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). Accordingly, the official-capacity claims for damages against Defendants Thompson, Crews, and White must be dismissed.

### 2. Due process claims

Plaintiff alleges various procedural due process violations. He first alleges price gouging at the inmate canteen and taxing of outside vendor orders. An inmate, however, has no federal constitutional right to be able to purchase items from a commissary, at a certain price, and without tax. *See McCall v. Keefe Supply Co.*, 71 F. App'x 779, 780 (10th Cir. 2003) (stating that an inmate's claim that prison commissary charged "outrageous" prices for goods purchased through the prison commissary failed to state a constitutional claim); *Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e note that we know of no constitutional right of access to a prison gift or snack shop."); *Antonelli v. Walters*, No. 07-219-GFVT, 2009 WL 921103, at *16 (E.D. Ky. Mar. 31, 2009) ("Simply put, as [the inmate] had no federal constitutional right to purchase commissary items, he had no right to purchase items at a particular price or to prevent the charging of exorbitant prices); *Poole v. Stubblefield*, No. 4:05-CV-1005-TCM, 2005 WL 2290450, at *2 (E.D. Mo. Sept. 20, 2005) (dismissing a prisoner's challenge to taxes on the prison's commissary items). Further, regarding Plaintiff's claim that he was charged Kentucky sales tax on an outside vendor order, he attached documentation indicating that he signed the receipt (which reflected the total cost including taxes) and demonstrating that order was actually sold through the canteen vendor, which is required to include sales tax on all of its orders pursuant to Ky. Rev. Stat. § 139.210. Consequently, Plaintiff has failed to state any due process claims with respect to canteen issues.

8

Plaintiff additionally claims that KSR misappropriated funds designated for college courses. Plaintiff has stated no constitutional violation as *his* money was not taken or misappropriated. Rather, state funds for educational courses purportedly were used elsewhere. He does not have a liberty interest in the state funds, and prisoners have no federally cognizable liberty interest in participating in vocational, rehabilitation, and educational programs while incarcerated. *See, e.g., Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001) (prisoners have no constitutional right to rehabilitation, education, or jobs); *Carter v. Morgan*, No. 97-5580, 1998 WL 69810, at *2 (6th Cir. Feb.10, 1998) (no constitutional right to educational classes); *Molina v. Wilkinson*, No. 96-3127, 1996 WL 678226, at *2 (6th Cir. Nov. 21, 1996) (prisoner has no constitutional right to educational classes); *Tribell v. Mills*, No. 93-5399, 1994 WL 236499, at *1 (6th Cir. June 1, 1994) (no constitutional right to vocational or educational programs).

Finally, Plaintiff alleges due process violations due to his placement in segregation while at KSR and his transfer to GRCC. Neither of these instances violates the Fourteenth Amendment. The law is clear that a prisoner has no inherent right under the United States Constitution to be incarcerated in a particular institution or to remain free of administrative segregation. *See Montanye v. Haymes,* 427 U.S. 236, 242 (1976); *Meachum v. Fano*, 427 U.S. 215, 223-25 (1976); *Clegg v. Bell*, 3 F. App'x 398, 399 (6th Cir. 2001); *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998); *Beard v. Livesay,* 798 F.2d 874 (6th Cir. 1986). Plaintiff also has failed to demonstrate any state-created liberty interest in freedom from transfer or placement in segregation for nine days because he has not shown that either circumstance imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

For these reasons, Plaintiff has failed to state a Fourteenth Amendment claim.

### 3. Retaliation

Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

Plaintiff was engaged in protected conduct while at KSR in the form of filing grievances and filing an Oldham Circuit Court case on January 28, 2010.

As adverse action, Plaintiff alleges that he was placed in segregation and then transferred to GRCC, where he was unable to continue and complete his Electrical Technology program and further unable to complete his physical therapy treatments. While placing an inmate in administrative segregation could deter a person of ordinary firmness from exercising his First Amendment rights, *see Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000), Plaintiff was only in segregation for nine days and during that time had access to the grievance process because he reports that on April 26, 2010, he "was brought the informal resolution to his grievance while he was still in segregation," although he did not have time to appeal prior to his transfer. Additionally, Plaintiff does not indicate the issue he was grieving while in segregation and, therefore, does not allege that he was grieving a non-frivolous claim. *See Herron*, 203 F.3d at 415 (holding that prisoner has a First Amendment right to file a grievance against prison officials on his own behalf, and this right is protected if the grievance is not frivolous).

"[T]ransfer to another institution of the same security level, with no other aggravating factors, is not sufficiently adverse to deter a person of ordinary firmness from engaging in the exercise of protected First Amendment activity." *Friedmann v. Corr. Corp. of Am.*, 11 F. App'x 467, 471 (6th Cir. 2001); *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 358 (6th Cir. 2006) ("[T]he transfer of a prisoner may rise to the level of unconstitutional retaliation where there are foreseeable consequences to the transfer that would inhibit the prisoner's ability to access the courts."). Because of the transfer, Plaintiff was unable to complete an Electrical Technology course and further unable to complete his physical therapy treatments. This circumstance is not sufficient to establish an adverse action that would deter a person of ordinary firmness from exercising his First Amendment rights. *See Friedmann*, 11 F. App'x at 471 ("[The plaintiff] simply claims that the institution was located farther away from those who visited him and *that the institution did not offer the programs in which he had previously participated*. This Court concludes that such circumstances are not sufficient to support a showing of 'adverse action' for purposes of a retaliation claim.") (emphasis added). And since the day of Plaintiff's arrival at GRCC, he began to ask about filing grievances, and while at GRCC has continued to file grievances and filed the instant federal suit.

Even if Plaintiff had sufficiently alleged adverse action, he has failed to show that any Defendant was involved in causing the adverse action. Plaintiff fails to show any involvement by Defendant Thompson, who he appears to sue because of her supervisory position as DOC Commissioner. Because the segregation and transfer occurred *after* Plaintiff's transfer to GRCC, Plaintiff fails to show any involvement by Defendant GRCC Warden White in the alleged retaliation. With respect to Defendant KSR Warden Crews, per a Detention Order that Plaintiff attached to his complaint, Sr. Captain Whitfield and Lt. Shantz placed Plaintiff in segregation

11

*before* notifying Defendant Crews of the situation. There are also no facts supporting any involvement by Defendant Crews in the transfer decision or supporting even any knowledge on her part of his college courses and physical therapy treatments at any time before the transfer. For these reasons, Plaintiff has failed to state a retaliation claim against any Defendant.

### 4. Medical claims

Plaintiff claims that "the Medical Department" was deliberately indifferent to his serious medical needs, when they denied and delayed him access to treatment. Presumably, Plaintiff is referring to the denial and delay in his physical therapy treatment. Plaintiff, however, has not sued any individual in "the Medical Department" at either KSR or GRCC and has failed to show the involvement by any named Defendants in any denied or delayed medical treatment. Accordingly, any Eighth Amendment medical claim against Defendants must be dismissed. Should Plaintiff wish to assert claims against named individuals of "the Medical Department" regarding any delayed or denied medical treatment, he may file a new action.

### B.    State-law claim

Plaintiff mentions "negligence" on several occasions in the complaint. Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if— . . . the district court has dismissed all claims over which it has original jurisdiction." Having determined that § 1983 claims, which provide jurisdictional basis of this suit, should be dismissed, this Court declines to exercise supplemental jurisdiction over any remaining state-law claim. *See* 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The state-law claim will be dismissed without prejudice.

For the reasons set forth more fully above, the Court will enter a separate Order dismissing all claims.

Date:

cc: Plaintiff, *pro se*
 Defendants
 General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4414.005